UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SERGIO C. DAVILA,<br><br>Defendant. | 2:18-cr-00194-APG-VCF<br><br>**REPORT AND RECOMMENDATION**<br><br>MOTION TO SUPPRESS [ECF NO. 25] |

Before the Court is Defendant Sergio Davila's Motion to Suppress Evidence. (ECF No. 25). For the reasons discussed below, Defendant's motion should be denied.

**BACKGROUND**

In this case, Defendant is charged with Felon in Possession of a Firearm and Felon in Possession of Ammunition. (ECF No. 1). The gun and ammunition were found during a traffic stop. (ECF No. 25-1). Defendant now moves to suppress the gun, ammunition, DNA tests, and his statement made during the traffic stop. (ECF No. 25). Based on the motion's briefing and the testimony of LVMPD Sergeants Shaun Rompery and David Milewski at an evidentiary hearing held on January 22, 2019, the facts in the case are as follows:

On November 17, 2015, shots were reported near an apartment complex on Sunrise Avenue in Las Vegas. (ECF No. 25 at 2). Arriving at the scene, Rompery saw a Hispanic male who, when he saw Rompery, entered into a car which left the scene at a high rate of speed. (ECF No. 30).[1] Rompery reported the description of the car, including the license plate, to dispatch. (*Id.*). Officers Milewski and Rozell

---

[1] ECF No. 30 is the minutes of the January 22, 2019 hearing, which was recorded.

saw a car matching the description and license plate number near Freemont and Charleston, so they stopped the car and ordered the four car occupants out. (*Id.*).

In Milewski's report of the stop, he states that "[u]pon approaching the vehicle…Sgt. Rompery and I noticed the strong odor of marijuana emanating from the vehicle." (ECF No. 25-1 at 3, admitted into evidence as ECF No. 31-A). At the January 22, 2019 hearing, Milewski testified several times that he smelled burnt marijuana emanating from the vehicle. (ECF No. 30). Neither the Government nor Defense Counsel asked Rompery whether he smelled marijuana as he approached the vehicle.

Based on the marijuana smell, Milewski and Officer Zemsta conducted a probable cause search of the vehicle, starting with the front seats and moving back into the trunk. (ECF No. 25-1 at 3). Milewski testified at the hearing that as an officer patrolling the downtown area, he was aware that Sunrise Avenue was a hot spot for illegal narcotics sales. (ECF No. 30). He also testified that the smell of burnt marijuana tends to overwhelm the smell of fresh marijuana. (*Id.*). Based on the smell of burnt marijuana, Milewski was looking for burnt marijuana, drug paraphernalia, fresh marijuana, and "owe sheets"—records of drug dealing activities. (*Id.*).

In the trunk, Milewski found a red and black bag. (*Id.*). Milewski searched the bag, describing the process as peeling away layers of documents to search for marijuana. (*Id.*). Milewski "glanced" at several of the documents he searched through for two purposes (1) to see who owned the bag and would have standing to challenge the search and (2) to look for owe sheets. (*Id.*). Some of the documents were entered into evidence at the January 22, 2019 hearing. They consisted of official documents, such as a social security card and medical identification (ECF No. 32 at 4), and a piece of notebook paper listing several names with accompanying dates of birth and social security numbers (*Id.* at 5). The documents contained several different male names that Milewski knew did not belong to either of the two male car passengers. (*Id.*). At the hearing, Milewski testified that the piece of notebook paper has the facial appearance of an owe sheet. (ECF No. 30). In his report, Milewski stated, "This raised my suspicions

due to the fact that the documents I initially observed were court issued documents, as well as medical documents for various individuals. Based on the above set of circumstances I believed that one of more of the individuals in the vehicle were involved in identity theft crimes." (ECF No. 25-1 at 3). "In addition to the documents, while searching the bag, [Milewski] located a black metal magazine containing 9mm bullets, one 9mm bullet, and one .22 caliber bullet." (*Id.*).

Milewski and Officer Sutton questioned the car passengers. (ECF No. 30). After being Mirandized, both the car driver (and daughter of the car's registered owner) and Defendant confirmed that the bag belonged to Defendant. (*Id.*). The Officers concluded that probable cause existed to detain Defendant and told the other car occupants that they could leave in the car. (*Id.*). The driver gave Officers consent to search the vehicle again while she separated her belongings from Defendant's belongings in the trunk. (*Id.*). Officer Zemsta found a firearm in "the gap between the seat and the back rest" where Defendant had been sitting. (ECF No. 25-1 at 4-5). The Officers had learned that Defendant is a convicted felon, so the Officers obtained a warrant to recover the firearm, firearm-related accessories, and Defendant's DNA. (*Id.* at 5). Defendant was arrested over an hour after the car was stopped. (ECF No. 25 at 4). No evidence of marijuana or marijuana usage was found in the car.

Defendant argues that (1) there was no probable cause to believe there was marijuana in his bags, (2) Milewski impermissibly expanded the scope of his search when he began reading the documents, and (3) all evidence seized was tainted by the unlawful search. (ECF No. 25 at 6, 8-13). During the January 22, 2019 hearing, Defendant asked that the Court make an adverse credibility finding regarding Milewski's statements that he smelled marijuana during the traffic stop. (ECF No. 30). In response, the Government argues that (1) the smell of marijuana provided probable cause to search the vehicle and the bags within it, (2) the documents were in plain view once Milewski rightfully searched the bags, (3) Milewski had probable cause to review documents inside the bags to establish ownership, and (4) Officers

found the gun after the car's owner gave permission to search the car, so it is not subject to exclusion. (ECF No. 26 at 6-13).

## DISCUSSION

The Fourth Amendment protects the right of people to be secure against unreasonable searches and seizures. Though the Fourth Amendment does not specifically preclude admission of evidence obtained in violation of its provisions, the courts enforce "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139-40 (2009).

"Under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime." *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010). "Probable cause exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place based on a totality of the circumstances." *United States v. Soto-Zuniga*, 837 F.3d 992, 1004 (9th Cir. 2016). "[I]f a law enforcement officer has probable cause to search a vehicle, that probable cause extends to all contents in the vehicle that could be connected to the suspected criminal activity," including containers within the vehicle. *United States v. Ewing*, 638 F.3d 1226, 1231 (9th Cir. 2011).

### I.  Probable Cause to Search the Bag Inside the Trunk

Milewski testified at the January 22, 2019 hearing that probable cause for the search was based on the smell of burnt marijuana. (ECF No. 30). Defendant asks this Court to find that (1) Milewski did not actually smell marijuana in the vehicle and (2) that even if Milewski did smell burnt marijuana, it would not justify searching a bag within the trunk of the car.

The Court finds Milewski credible regarding the smell of marijuana emanating from the car. Defendant argues that Milewski's testimony is inconsistent with Rompery's testimony, as Rompery did not testify about any marijuana smell. However, neither the Government nor Defense Counsel asked

Rompery about whether he smelled marijuana coming from the car. The only evidence before the Court, Milewski's report and testimony, established that the car smelled like marijuana. No evidence rebutted that fact. The Court acknowledges that no marijuana or drug paraphernalia was found in the car. However, this alone is not enough to convince the Court that Milewski was lying. *See United States v. Evans*, 122 F.Supp.3d 1027, 1034 (D. Nev. 2015) (concluding that "there is reason to doubt the officers' testimony regarding the odor of contraband" when (1) the officers testified that they smelled different drugs, (2) the drugs found would have only had a faint smell, and (3) an officer "testified that he could not state with certainty that this was the product he was smelling"). Milewski was adamant at the hearing about the smell of marijuana. The smell of burnt marijuana could indicate that the marijuana had been fully consumed at the time of the traffic stop, as "a police officer's…nose detects the odor of marijuana for some time after a joint has been smoked." *Fla. v. Harris*, 568 U.S. 237, 246 n.2 (2013).

Finding Milewski to be credible, the smell of marijuana and other suspicious factors constituted probable cause for officers to search the vehicle in this case. *See United States v. Soto-Zuniga*, 837 F.3d 992, 1004 (9th Cir. 2016); *United States v. Davis*, 687 F. App'x 634, 635 (9th Cir. 2017). "[T]he presence of the odor of contraband may itself be sufficient to establish probable cause." *United States v. Kerr*, 876 F.2d 1440, 1444-45 (9th Cir. 1989). Though Defendant argues that medical marijuana was legal at the time of the car stop, Milewski pointed out that consuming marijuana in public was illegal, even with a medical marijuana license. (ECF No. 30). In addition to the smell of marijuana, the officers stopping the car knew that it sped away from the scene of a crime in a hot spot for illegal narcotic sales when one of the passengers observed a police officer.

Once officers had probable cause to search the vehicle, the probable cause extended to all contents in the vehicle that could be connected to the suspected criminal activity, including the trunk and bags within the trunk. Milewski testified that the smell of burnt marijuana tends to overwhelm the smell of fresh marijuana. (ECF No. 30). Knowing that the area was a hot spot for illegal narcotic sales, officers

had probable cause to search the car for fresh marijuana as well as burnt marijuana, and fresh marijuana could have been found in the trunk and bags within the trunk.

## II.     Searching the Documents

Defendant argues that, even if officers properly searched the trunk for marijuana, "Officers exceeded the scope of their authority when they went through in detail the contents of Mr. Davila's closed bags after determining that they did not contain marijuana" and "review[ed] the content of the documents contained in the bag." (ECF No. 25 at 9). Officers can search among documents for other types of evidence, but the search does "not require the perusal of the [documents'] written contents." *United States v. Wright*, 667 F.2d 793, 799 (9th Cir. 1982). Milewski testified at the hearing that, as he peeled away layers of documents in the bag to search for marijuana, he "glanced" at the documents to (1) see who owned the bag and would have standing to challenge the search and (2) look for owe sheets. (ECF No. 30).

The Court is not persuaded that the scope of Milewski's initial search included establishing ownership of the bag at the time that he looked through the documents. Milewski had not found anything incriminating in the bag prior to looking at the documents—there was no marijuana, and Milewski did not see the ammunition until after he began looking through the documents. Allowing officers to look through documents to establish ownership of items before having any reason to believe the items are incriminating would undermine the principle behind permitting warrantless searches based on probable cause.

However, Milewski did have probable cause to "glance" at the documents to look for owe sheets. The smell of marijuana and the knowledge that the car sped away from the scene of a crime in a hot spot for illegal narcotic sales when one of the passengers observed a police officer gave Milewski probable cause to believe that there was evidence of narcotic sales in the car, including owe sheets. Milewski testified that, in particular, the piece of notebook paper admitted into evidence listing several names had

the facial appearance of an owe sheet. (ECF No. 30; ECF No. 32 at 5). Based on its facial appearance, Milewski could then read the document more carefully to determine whether it was an owe sheet.

On that piece of notebook paper, Milewski observed several different male names that he knew did not belong to either of the two male car passengers with accompanying dates of birth and social security numbers. (ECF No. 30). The presence of this suspicious personal identification information gave Milewski probable cause to believe the bag contained evidence of identity theft crimes, at which point he could more carefully look at the official documents, such as a social security card and medical identification, present in the bag. (ECF No. 32 at 4).

Though Milewski did not initially have probable cause to search the bag in the trunk for documents relating to identify theft crimes, probable cause developed in a legal manner based on (1) the smell of marijuana and other suspicious factors, (2) the document that had the facial appearance of an owe sheet, and (3) the suspicious personal identification information within the document. Because there was no unlawful search of the documents in this case, Defendant's motion to suppress should be denied.

### III. Excluding Evidence

Having concluded that Milewski's search of the documents was supported by probable cause, the evidence officers obtained after searching the documents should not be excluded. Even if the Court were to conclude that searching the documents was improper, the magazine and bullets found in Defendant's bag should not be suppressed. Milewski was properly searching the bag for marijuana, and the ammunition was in plain view. Officers initially stopped the car in relation to a shooting, so "the incriminating nature" of the ammunition would have been "immediately apparent to the searching officer." *United States v. Wright*, 667 F.2d 793, 797 (9th Cir. 1982).

If the Court were to conclude that Milewski's search of the documents was not supported by probable cause, Defendant's statement during his arrest, Defendant's DNA, and the gun should be suppressed. "The exclusionary rule has traditionally barred from trial physical, tangible materials

obtained either during or as a direct result of an unlawful invasion." *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). Officers obtained Defendant's statement in order to determine ownership of the documents, not the ammunition. (ECF No. 25-1 at 3-4). The Government argued in briefing that the gun should not be suppressed because, "[e]ven if the officers had not searched the trunk or the bags in the trunk, they certainly could have requested consent to search the interior of the compartment area a second time before the owner and operator left." (ECF No. 25 at 13). However, neither officer testified at the hearing that this would have been their procedure, and the Court should not rely on the Government's speculation. Finally, officers obtained Davila's DNA through a search warrant after the gun was found. (ECF No. 25-1 at 5). If the gun should be excluded, the DNA should also be excluded.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY Recommended that Defendant's Motion to Suppress Evidence (ECF No. 25) should be DENIED.

DATED this 31st day of January, 2019.

                                         _____
                                         CAM FERENBACH
                                         UNITED STATES MAGISTRATE JUDGE